UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN ANDRADE, | ) | CASE NO. 1:08CV1856 |
| Plaintiff, | )<br>)<br>) | MAGISTRATE JUDGE<br>GEORGE J. LIMBERT |
| v. | )<br>) | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | )<br>)<br>) | **MEMORANDUM OPINION<br>AND ORDER** |
| Defendant. | ) | |

Brian Andrade ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Administrative Law Judge's ("ALJ") decision and DISMISSES the instant case in its entirety with prejudice:

**I.   PROCEDURAL HISTORY**

On March 29, 2002, Plaintiff filed an application for SSI, alleging Disability as of January 1, 1996. Tr. at 478-79. Plaintiff's application was denied initially and on reconsideration. *Id*. at 461-63, 465-67. On September 19, 2006, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 759 - 788. At the hearing, the ALJ heard testimony from Plaintiff; Heather Goren, a medical expert; and Lynn Smith, a vocational expert. *Id*. On September 26, 2006, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 21-31. The Appeals Council denied Plaintiff's request for review. *Id*. at 12-15.

On August 2, 2008, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On January 5, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #14. On March 2, 2009, Defendant filed a brief on the merits. ECF Dkt. #17. Plaintiff has filed no reply.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ first found that Plaintiff has engaged in substantial gainful activity in 2004 since he earned $13,681.00 that year. Tr. at 26. The ALJ went on to find that Plaintiff did not engage in substantial gainful activity since that time. *Id.*

The ALJ next found that Plaintiff suffers from the following severe impairments: degenerative disc disease, affective disorder, and substance abuse. Tr. at 26. The ALJ reasoned that the record contains medical source opinions as to what Plaintiff can still do despite his impairments, and all of those sources agree that he is limited in his ability to perform basic work related activities because of his medically determinable impairments. *Id.*

Turning to the listings of impairments, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 26. The ALJ reasoned that there are no indicated findings by any treating or examining physician that satisfy the requirement of any listed impairment. *Id.*

The ALJ went on to determine that Plaintiff retains the residual functional capacity ("RFC") to perform the exertional and non-exertional requirements of basic work-related activities except for: lifting, carrying, pushing and pulling more than 10 pounds frequently and up to 20 pounds more than occasionally; work involving overhead pushing and pulling; standing and/or walking for more than a total of about 6 hours in an 8-hour workday, but no more than one hour at a time; sitting for more than a total of about 6 hours in an 8-hour workday, but no more than one hour at a time; more than occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds, no more than occasional kneeling and crouching; never crawling; work involving heights; work involving temperature extremes; work involving more than simple repetitive tasks; work involving more than superficial interaction with the public, co-workers or supervisors (no arbitration, negotiation, or confrontation); more than simple reading; and work involving production quotas. Tr. at 26-27.

In arriving at this RFC, the ALJ first considered Plaintiff's testimony that he suffered a myocardial infarction in 1995 and in 1996. Tr. at 27. Plaintiff testified that he became depressed because his doctor did not want him to work and he felt frustrated that he was unable to work. *Id.*

He further complained of back pain because his L4 and L5 vertebrae are fusing and deteriorating. *Id*. He stated that he has numbness in his legs when he sits too long and has pain in his shoulders. *Id.* He stated that he blacks out for 2-3 minute periods and the doctors cannot determine the reason, but he thinks that it is psychological. *Id*. The ALJ noted that Plaintiff testified that he gets sharp pains across the left side of his chest and that he uses nitroglycerin all of the time. *Id*. The ALJ noted that Plaintiff takes nitroglycerin regardless of pain being cardiac or anxiety related. *Id*. Plaintiff also testified that he has an enlarged breast that causes severe pain every day. *Id*. He testified that he has asthma and cannot walk far or be in a room that is too hot without experiencing difficulty breathing. *Id*.

The ALJ found that Plaintiff's statements concerning these alleged symptoms were not entirely credible. Tr. at 27. The ALJ first reasoned that the medical expert, Dr. Goren, opined that Plaintiff could complete an 8 hour workday in a 40 hour workweek. *Id*. The ALJ noted that the record reflects that Plaintiff was consistently noncompliant with ordered diagnostic testing at MetroHealth Medical Center and the tests that were completed did not reveal findings that were proportionate with Plaintiff's alleged limitations. *Id*.

The ALJ noted that Plaintiff has been followed at MetroHealth Medical Center since 2001. Tr. at 27. He noted that Plaintiff was seen on June 19, 2002 for complaints of headaches and documentation indicated that he had a heart attack in 1995 and had used cocaine until the early 1980's. *Id*. Plaintiff continued to treat with MetroHealth Medical Center through 2002. *Id*. On May 13, 2003, he saw Mary Ellen Behmer, M.D. with complaints of back pain and a request to refill a prescription for Percocet. *Id*. at 28. The ALJ noted that Plaintiff reported occasional shooting pain in his calf with numbness, but Dr. Behmer noted that there was no weakness or loss of urinary or bowel control, and on examination found that he could walk on his toes and heels. *Id*. Dr. Behmer performed a leg raise and documented pain on the right side at 25 degrees, but noted that Plaintiff could bend forward and sideways. *Id*. Dr. Behmer informed Plaintiff that his pain could respond to Neurontin and NSAIDS, but he refused to take anything but Percocet. *Id*. The ALJ also noted that Plaintiff missed an appointment for an MRI with Dr. Behmer at the end of May, 2003. *Id*.

The ALJ next noted that on June 18, 2003, Plaintiff returned for complaints of low back pain and a refill of Percocet. Tr. at 28. Plaintiff reported back pain after moving furniture. *Id*. At this time, Plaintiff's MRI was rescheduled. *Id*. On September 25, 2003, Plaintiff saw Amanda Lenhard, M.D. of MetroHealth Medical Center with complaints of back pain. *Id*. The ALJ noted that an MRI showed mild degenerative disease, but Dr. Lenhard noted that Plaintiff avoided questions about why he missed so many appointments for a stress test and pulmonary function testing. *Id*. The ALJ noted that Dr. Lenhard found Celebrex and pain management to be the appropriate therapy for Plaintiff based upon his MRI results. *Id*. Dr. Lenhard noted, however, that Plaintiff became very agitated about the denial for a refill of Percocet, becoming angry and using foul language. *Id*.

The ALJ noted that Plaintiff saw Douglas Einstadter, M.D. on January 10, 2006 with complaints of shortness of breath and black-outs. Tr. at 28. Dr. Einstadter noted that Plaintiff did not follow up with a stress test or an EEG. *Id*. He referred Plaintiff for a pulmonary function test and encouraged him to stop smoking. *Id*.

The ALJ then turned to a report from Robert Norris, M.D., a medical consultant with the Bureau of Disability Determination Services, assessing Plaintiff's physical RFC. Tr. at 28. The ALJ noted that Willa Caldwell, M.D., another medical consultant with the Bureau of Disability Determination Services, concurred in Dr. Norris' opinion on January 19, 2005. *Id*. Both doctors opined that Plaintiff had the RFC to perform basic work activities on a medium level. *Id*. The ALJ gave their opinions limited weight because they did not have an opportunity to examine or interview Plaintiff. *Id*.

Next, the ALJ addressed Plaintiff's mental impairments. Tr. at 28-29. The ALJ noted that Plaintiff was seen at Bridgeway, Inc., where he received psychiatric care for complaints of depression, but he was terminated on April 4, 2005 after he failed to attend several appointments. *Id*. at 28.

The ALJ noted an October 13, 2004 examination by clinical psychologist Richard Davis, a medical consultant for the Bureau of Disability Determination Services. Tr. at 28. The ALJ observed that Plaintiff told Dr. Davis that he was last employed in 1995, but he testified that he last worked in 1996. *Id*. He also told Dr. Davis that he made a living by working temporary

employment while he was in the streets, but he had testified that he was a construction supervisor in 2004. *Id*. He told Dr. Davis that he watches television most of the day, but he testified that he watches only 1-2 hours of television daily. *Id*. Dr. Davis opined that Plaintiff had the intellectual ability to understand and follow simple instructions and probably the ability to follow more difficult instructions. *Id*. He further opined that Plaintiff was capable of remaining employed for long periods of time , that he had no difficulty sitting, standing, or moving about in his presence, and that he had depression without a depressed affect. *Id*. The ALJ gave Dr. Davis' opinion significant weight because it was consistent with the evidence of record and because he had an opportunity to interact with Plaintiff. *Id*.

The ALJ noted an RFC assessment completed by Cindy Matyi, Ph.D, a psychological consultant with the Bureau of Disability Determination Services on October 25, 2005. Tr. at 29. Dr. Matyi opined that Plaintiff had a mild degree of limitation in activities of daily living and a moderate degree of limitation in difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. *Id*. She found no episodes of decompensation. *Id*. She also found that Plaintiff's statements were only partially consistent. *Id*. The ALJ gave Dr. Matyi's opinion medium weight based upon its consistency with other evidence of record.

Concluding his findings in regard to Plaintiff's RFC, the ALJ found that inconsistencies existed between the record and Plaintiff's testimony. Tr. at 29. The ALJ reasoned that the record showed that Plaintiff complained of back pain and persistently sought medication, specifically Percocet for pain control, yet he missed several appointments for MRIs. *Id*. Then, when the MRI was finally completed it was unremarkable. *Id*. The ALJ further noted that Plaintiff's physical examination did not reveal acute pathology that was consistent with his alleged complaints. *Id*. The ALJ went on to find that one of Plaintiff's episodes of back pain occurred after he was moving furniture and that activity is not consistent with a person experiencing the pain Plaintiff was alleging. *Id*. The ALJ found inconsistency with Plaintiff's complaints of shortness of breath if he walked for too long of a period or if he entered a hot room, yet, he continues to smoke. *Id*. The ALJ also noted that Plaintiff told Dr. Davis on October 12, 2004 that he had not worked since 1996, but he then stated that he worked "jobs at temporary agencies." *Id*. The ALJ noted a disability report where

-5-

Plaintiff indicated that he stopped working in June of 2001, but on the following line indicated that he worked at temporary agencies from January 1989 to December 2001. *Id*. On August 9, 2004, Plaintiff told his psychiatrist that he was still working and owned his own construction company, and at the administrative hearing on September 16, 2006, he testified that he worked in 2004. *Id*. Based on this evidence, the ALJ found that "[a]lthough the claimant alleges his pain is disabling, the evidence indicates otherwise." *Id*.

The ALJ went on to find that Plaintiff could not perform his past relevant work as a construction worker because vocational expert Lynn Smith testified that this is a semi-skilled job that is performed at a heavy work level. *Id*. The ALJ found, however, that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 30. The ALJ reasoned that Ms. Smith opined that a hypothetical person with Plaintiff's age, education, work experience, and RFC could perform the duties of a ticket seller, an information clerk, and a stock checker. *Id*. Accordingly, the ALJ found that Plaintiff is not disabled. *Id*. at 31.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§

> 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### V.   ANALYSIS

#### A.   Whether the ALJ erred in assessing Plaintiff's RFC

Plaintiff first contends that the ALJ erred in failing to properly recognize the limitations that the state agency doctors noted. ECF Dkt. #14 at 11. Plaintiff reasons that, although the ALJ found that he suffers from an affective disorder and substance abuse, the RFC fails to account for the moderate limitations in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without interruptions from

psychologically based symptoms and to perform in a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instruction and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. *Id*. at 12.

Building upon his argument relating to the state agency doctors' purported moderate limitations, Plaintiff contends that the vocational expert opined that a hypothetical person with moderate limitations on working in proximity to others, completing a normal workday and workweek, and in responding appropriately to changes to the work-setting would have no available jobs when the term "moderate" is defined either as up to one-third of the day or when it is defined as up to 20% of the time. ECF Dkt. #14 at 12-13.

Plaintiff contends that the foregoing limitations are further supported by the record because Plaintiff reported to Bridgeway that he would have blackouts when he became angry and then would regret what he had done. ECF Dkt. #14 at 13. He also reported feeling nervous and stressed and that he tends to shut down when things become overwhelming. *Id*. Plaintiff further notes that, during an evaluation with the state agency consultative examiner, he reported having trouble getting along with teachers and fellow students as a child. *Id*. The examiner noted a poverty of speech in Plaintiff's responses. *Id*. Plaintiff also notes that he was diagnosed at Bridgeway with a cluster B personality disorder after an original diagnosis of bipolar was determined not to be applicable. *Id*. Plaintiff notes that Dr. Davis diagnosed an adjustment disorder with mixed disturbance of emotion and conduct, antisocial personality disorder, and borderline intellectual functioning. *Id*.

Plaintiff asserts that the ALJ's determination that he suffers from an affective disorder is noted in the record, however he does not include a finding under listing 12.08, although it is consistently demonstrated throughout the records from Bridgeway and was diagnosed by Dr. Davis. ECF Dkt. #14 at 13. Plaintiff contends that the diagnosis of borderline personality disorder includes Plaintiff's depression and takes into account interpersonal difficulties and Plaintiff's anger, which accounts for further limitations with respect to working with other and completing a normal workday/workweek. *Id*. at 13-14.

-8-

Plaintiff's argument lacks merit for several reasons. Insofar as Plaintiff contends that the ALJ erred in failing to make a finding under listing 12.08, the ALJ stated "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (internal citation omitted) and "Under the listing of impairments in Appendix 1, Subpart P, Regulations Part 404, there are no indicated findings by treating or examining physicians that satisfy the requirements of **any listed impairment**. Therefore I do not find that the claimant has an impairment or combination of impairments that meet or medically equal **one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.**" Tr. at 26 (emphasis added).

Plaintiff in this case provides no legal authority to warrant a holding that an ALJ is required to specifically state in his decision each listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 and how a claimant's impairments or combination thereof meet or do not meet each listing. While the ALJ in this case did not specifically refer to Listing 12.08 in his decision, he did indicate that he had considered the record in its entirety, he set forth the evidence regarding Plaintiff's impairments, and he specifically stated that "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 26.

Less was found sufficient in *Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir.1987), where the claimant complained that the ALJ did not specifically state in his decision that he had considered whether the claimant's combination of impairments prevented him from performing his past relevant work. The Sixth Circuit found that although the ALJ did not so specifically state, the findings within the decision suggested that the ALJ did consider the claimant's combination of impairments as the ALJ addressed each of the claimant's impairments individually, found that the impairments did not meet the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, and indicated that he had made his decision after a thorough review of the record. *Id.* at 590. The Court found that the fact that the ALJ stated that the claimant's "impairments" (plural) did not prevent him from performing his past relevant work suggested that the ALJ considered the combination of impairments as opposed to each impairment individually. *Id.*

The ALJ in the instant case made sufficient findings to indicate that he considered all of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 and the medical evidence on Plaintiff's impairments. The undersigned finds that substantial evidence supports this determination.

To the extent that Plaintiff contends that a diagnosis of an antisocial personality disorder entitles him to benefits, his argument lacks merit because it is well established in the Sixth Circuit that a mental impairment diagnosis standing alone is insufficient to establish entitlement to disability benefits. *Anderson v. Sullivan*, 911 F.2d 731 (Table), 1990 WL 116539 at *7 (6th Cir. 1990) unreported; *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir.1988). "An individual must establish that the condition is disabling." *Id*.

Plaintiff goes on to argue that his global assessment of functioning ("GAF") rating ranged from 51 to 55, with Dr. Davis noting a score of 55, indicating moderate to serious symptoms. ECF Dkt. #14 at 14. Plaintiff contends that "[t]hese findings are indicative of severe restrictive functioning and implies that further restrictions should be imposed." *Id*. Plaintiff's argument lacks merit because the Sixth Circuit has noted that there is no statutory, regulatory, or other authority requiring an ALJ to put stock in a GAF score. *Kornecky v. Comm'r of Soc. Sec*., No. 04-2171, 176 Fed. Appx. 496, 2006 WL 305648, at *14 (6th Cir. Feb. 9, 2006), unpublished, citing *e.g., Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir.2002) (ALJ's failure to refer to GAF score did not make his RFC analysis unreliable).

Plaintiff concludes by arguing that the evidence he highlighted "as a whole supports the state agency limitations which were included in the additional hypothetical question posed to the vocational expert and resulted in the expert's testimony that there would [be] no jobs available in the national economy which would accommodate these limitations. Therefore, once the additional limitations of occasional restrictions in the areas of working in coordination with or in proximity to others, completing a normal workday and workweek, and responding appropriately to changes in the work setting, are fully and fairly taken into consideration, then a finding of disabled is warranted." ECF Dkt. #14 at 14. Plaintiff's argument lacks merit, because as noted above, the Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's

conclusion. *Walters,* 127 F.3d 528.

The key inquiry in the case at bar is not whether the evidence to which Plaintiff points supports Dr. Matyi's moderate limitations in social functioning and in maintaining concentration, persistence, and pace; the key inquiry is whether substantial evidence supports the ALJ's finding that Plaintiff suffered less than moderate limitations in those areas. Plaintiff has not questioned the weight that the ALJ afforded to either Dr. Davis' opinion or to Dr. Matyi's opinion on the issue. *See Walters,* 127 F.3d 528.  Instead, Plaintiff asserts that the ALJ erred in failing to adopt the hypotheticals based upon moderate limitations.  To the contrary, the ALJ need not consider a vocational expert's answer to a hypothetical that the ALJ later decides is not supported by the facts. *Corley v. Commissioner of Social Sec.*, Case No. 98-3785, 1999 WL 970306 at *2 (6th Cir. Oct. 14, 1999), unreported, citing *Conn v. Sec'y of HHS,* 51 F.3d 607, 610 (6th Cir.1995).  Here, the ALJ implicitly found that the hypothetical was unsupported by the facts because he adopted the vocational expert's response to the hypothetical based upon less than moderate restrictions. *See* Tr. at 30.  The ALJ's decision to do so was based upon the weight he afforded to Dr. Davis' and Dr. Matyi's opinions.  Plaintiff has failed to articulate any basis upon which the Court could find that the ALJ lacked substantial evidence supporting his decision to afford significant weight to Dr. Davis' opinion and medium weight to Dr. Matyi's opinion.  Accordingly, the Court sees no error in the ALJ's decision to rely on the hypothetical that was based upon less than moderate restrictions.

Nevertheless, the Court finds that the ALJ's RFC is consistent with Plaintiff's limitations. Dr. Davis, the clinical psychologist to whom the ALJ gave significant weight, found that Plaintiff could relate satisfactorily to other people. Tr. at 29, 549. The RFC limits Plaintiff to no more than superficial interaction with the public, co-workers, or supervisors, with no arbitration, negotiation, or confrontation. *Id*. at 27. Dr. Davis found that Plaintiff could understand and follow simple instructions and probably more difficult instructions, and the RFC restricts Plaintiff to work involving no more than simple repetitive tasks. *Id*. at 27, 550. While Plaintiff contends that State Agency Physician Dr. Matyi opined that he would have moderate limitations in additional areas, the ALJ gave Dr. Matyi's opinion limited weight. Since Plaintiff fails to articulate any basis for

-11-

questioning the weight that the ALJ afforded to either Dr. Davis' opinion or Dr. Matyi's opinion, the Court fails to see any reason to reverse the ALJ's decision in this regard.

        **B.**      **Whether Plaintiff is entitled to remand for consideration of new and material evidence**

Plaintiff next contends that his case should be remanded for consideration of new and material evidence submitted subsequent to the hearing. ECF Dkt. #14 at 14-17. Plaintiff notes that an echocardiogram dated November 28, 2006, revealed trace mitral and tricuspid regurgitation, focal wall motion abnormalities, global hypokinesis and an ejection fraction of 35%. *Id*. at 15 citing Tr. at 753. Plaintiff further notes that a cardiac catheterization revealed moderate diffuse disease of 50% in the left main coronary artery, 95% blockage of the mid left anterior descending artery; 50% blockage of the mid circumflex proximal subsection, 60% blockage of the first obtuse marginal proximal subsection; and 100% occlusion of the proximal right artery distal subsection. *Id*. a at 15-16 citing Tr. at 720, 750. Plaintiff claims that he underwent stenting to the mid left anterior descending artery due to these findings. *Id*. at 16.

Plaintiff contends that this evidence is new and material because the original medical records do not include either an echocardiogram or a catheterization other than the report from 1997. ECF Dkt. #14 at 16 citing Tr. at 667. Plaintiff notes, however, that the medical evidence at the time of the hearing revealed continued complaints of chest pain, shortness of breath, edema in the lower extremities, and episodes of lightheadedness and blackouts which were not adequately explained in the record. *Id*. Additionally, Plaintiff notes that he testified that he experienced chest pain on a daily basis. *Id*. Plaintiff notes that the evidence was developed only two months after the administrative hearing date and is relevant to the time period that the ALJ was considering because the findings of the cardiac testing relate to progressive disorders. *Id*. Plaintiff also notes that the medical expert testified that he was surprised that Plaintiff was not seeing a cardiologist or having cardiac tests performed. *Id*. citing Tr. at 780. Accordingly, Plaintiff concludes that, had the ALJ had this evidence before him, it is probable that he would have made a different determination, making remand necessary. *Id*. at 16-17.

-12-

Federal courts that review social security claims cannot consider evidence first submitted to the Appeals Council as part of the record for substantial evidence review because it is the ALJ's decision and not the Appeals Council's denial of review that federal courts review and the ALJ did not have this evidence before him at the time of his review. *Foster v. Halter*, 279 F.3d348, 357 (6th Cir. 2001), citing *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). Since it is the evidence that was before the ALJ that is reviewed by this Court to determine whether substantial evidence supports the ALJ's decision, new evidence submitted to the Appeals Council after the ALJ hearing cannot be considered. Therefore, this Court cannot review the additional evidence submitted to Appeals Council by Plaintiff.

However, the Court can remand a case to the Commissioner under sentence four of 42 U.S.C. § 405(g), sentence six of 42 U.S.C. § 405(g), or under both of these sections. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Serv*s., 804 F.2d 964, 966 (6th Cir.1986). The sixth sentence of 42 U.S.C.A. § 405(g) provides the standard to determine whether to remand a claim based upon additional submitted information:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . .

42 U.S.C.A. § 405(g). Therefore, before a Court will remand a social security claim for consideration of additional evidence, the claimant must prove that new evidence exists which would be material to the determination of his disability claim and that good cause exists as to why he failed to incorporate this evidence into the prior administrative proceedings. *Foster,* 279 F.3d at 357, citing *Cline,* 96 F.3d at 148.

This Court does not consider evidence to be "new" solely because it was not prepared until after the hearing before the ALJ. *Foster,* 279 F.3d at 257. Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.,* quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990). Further, the claimant must show that the new evidence is also "material," which means that the claimant must show that there is "a reasonable

probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988). Moreover, in order for a claimant to show good cause for failing to incorporate the new and material evidence in a prior proceeding, he must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster,* 279 F.3d at 357, citing *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam).

In the case at bar, Defendant contends that new and material evidence cannot be generated expressly for the purpose of proving disability. ECF Dkt. #17 at 16 citing *Koulizos v. Secretary of Health & Human Services*, No. 85-1654,1986 WL 17488 at *2 (6th Cir. Aug. 12, 1986). The *Koulizos* court stated that good cause is shown for a sentence six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos*, 1986 WL 17488 at *2. The *Koulizos* court denied a claimant's request to remand because new medical evidence was generated to prove disability and was not necessitated by claimant's ongoing treatment. *Id.*

Under the *Koulizos* test for good cause, Plaintiff's treatment was necessary because he ultimately received stenting. Tr. at 720. Regardless, Plaintiff has failed to establish good cause because the Court is unable to determine that the medical records were generated for the purpose of continued medical treatment, as opposed to being generated for the purpose of proving disability. Since it is Plaintiff's burden to show that the records were generated in the continued course of medical treatment, the Court finds that he has failed to establish good cause.

Although there are indications at page 720 of the transcript that Plaintiff reported blackouts and chest pain prior to the stenting and the November 28, 2006 echochardiogram, Plaintiff, on his own admission experienced these problems prior to the administrative hearing and did not seek cardiac care:

> However, the medical evidence at the time of the hearing revealed continued complaints of chest pain, shortness of breath, edema in the lower extremities, and episodes of lightheadedness and black out which were not adequately explained in the

record.

ECF Dkt. #14 at 16 (internal citations omitted).  If Plaintiff experienced these symptoms to such an extent prior to the administrative hearing and failed to seek cardiac care, as the medical expert noted, then his echocardiogram and catheterization subsequent to the hearing cannot be considered care arising from the continued medical treatment of the condition because there was no indication that Plaintiff was going to seek that treatment until after the medical expert suggested it at the administrative hearing.  The fact that stenting was ultimately determined to be necessary following the catheterization is immaterial because that fact does not speak to Plaintiff's subjective motivation for seeking the medical care.  It appears from the record that Plaintiff may have sought the additional care merely to establish a record for his disability claim.  As Defendant notes, one of the records submitted after the administrative hearing explicitly states that the reason for examination was that Plaintiff was "trying to get SSI."  Tr. at 701-03 (transmittal letter), 736 (treatment record).  The Court finds that the evidence that Plaintiff has submitted is equivocal, and the Court is unable to determine with certainty whether the records were generated in the continued course of medical treatment.  Accordingly, the Court finds that Plaintiff has failed to establish good cause for failing to obtain these records prior to the hearing and for failing to present these records to the ALJ.

Certainly Plaintiff does not control every aspect of his medical care and cannot be wholly faulted for not receiving an echocardiogram and catheterization prior to the administrative hearing.  As Plaintiff notes, the medical expert testified that he was surprised that Plaintiff has not seen a cardiologist or been undergoing testing, and "even implied that this was needed."  ECF Dkt. #14 at 16; *see also* ECF Dkt. #14 at 10 (stating that Dr. Goren "implied that Mr. Andrade should have an echochardiogram, stress test, and/or catheterization.").  Defendant argues that, had Plaintiff seen a need to obtain additional cardiac testing based upon the medical expert's testimony, Plaintiff should have asked to keep the administrative record open.  ECF Dkt. #17 at 16-17.  The Court agrees because HALLEX I-2-678(2) provides that a claimant has a right to request an ALJ to keep an administrative record open for the submission of additional evidence:

-15-

> If the claimant and the representative have additional evidence to submit, or the ALJ determines that additional evidence is needed (e.g., a CE or an updated medical report), the ALJ will inform the claimant and the representative that the record will remain open after the hearing to allow them time to submit the additional evidence, or until the ALJ can obtain the additional evidence that is needed.

HALLEX I-2-678(2), available at http://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-78.htm (last visited Mar. 31, 2009). Further, Plaintiff was represented by counsel, and neither he nor his lawyer asked the ALJ to keep the record open in order to present additional medical evidence in support of Dr. Goren's opinion. The good cause requirement is not met where a claimant does not request that the record remain open until additional evidence could be submitted because an ALJ is entitled to presume that a claimant who was represented by counsel has made his best case. *See Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, 2002 WL 343402 at \*\*7 (6th Cir. Mar. 4, 2002), unreported.

### VI.   CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision. The instant case is DISMISSED in its entirety WITH PREJUDICE.

IT IS SO ORDERED.

DATE: April 2, 2009                               */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE